RENDERED:  AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0846-MR

MICHAEL C. ADAMS                                                APPELLANT

APPEAL FROM BOONE CIRCUIT COURT
v.          HONORABLE KENDRA L. MCCARDLE, JUDGE
ACTION NO. 22-CI-00479

TARA N. ADAMS                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND COMBS, JUDGES.

COMBS, JUDGE:  This case concerns an action for dissolution of marriage.

Michael Adams appeals the June 2, 2025, judgment of the Boone Circuit Court that

awarded sole custody of his children to their mother, Tara Adams; established his

child support obligation; divided the parties' marital property; and ordered him to

pay a portion of Tara's attorney's fees.  After careful review of the briefs, the law,

and the record on appeal, we affirm.

Michael and Tara married in 2010 and separated in 2022. They have two minor children. Michael filed a petition for dissolution of the marriage May 2, 2022. On May 10, 2022, a temporary agreed order governing custody of the children and parenting time was entered. In August 2022, Michael and Tara agreed to submit to a custody evaluation to be conducted by Marvin & McCrary Forensic Evaluation Services. A bifurcated decree of dissolution was entered in March 2023, and Michael remarried some days later. Remaining for later determination were issues involving property division, custody of the children, parenting time, and child support.

Early in the marriage, Michael founded the Counseling Services of Michael Adams & Associates. The parties agree that the business was valued at $288,884 as of December 31, 2022 -- the last year for which financial records were available prior to entry of the decree of dissolution just months later in March 2023. According to Michael, the business was thriving at this point. However, he began to wind down the business in October 2023 -- seven months **after** the divorce decree was entered. The business closed its doors in April 2024.

In July 2024, Michael's license to render counseling services was suspended by the Kentucky Board of Licensed Professional Counselors for a period of five years. The suspension was attributable, in part, to Michael's involvement in a romantic relationship with a client in violation of his ethical

obligations. At the time of the dissolution, Tara worked as Vice-President of Trust Services and Compliance at Johnson Investment Counsel. She was unaware of the state of Michael's business and the status of his professional license.

Following its final hearing, the trial court ordered an equal distribution of the parties' real property; their vehicles; the value of the counseling business; their 2022 tax refunds; retirement and investment accounts; various household items; photographs; firearms; and bank accounts. With respect to custody of the children, the court rejected Michael's request that the parties return to a shared parenting arrangement (including an alternating 2-2-3 weekly schedule) that had been established by a temporary agreed order entered shortly after Michael's petition for divorce was filed. The agreed arrangement described in the temporary order of May 2022 had continued until Michael suffered a mental health crisis after his second wife filed for divorce in July 2023. Upon Tara's motion, an emergency custody order was entered at that time.

In August 2023, another agreed order was entered providing that Michael would exercise parenting time with his children only at a designated public place. The twice-weekly visits were to last for two hours. Michael also agreed to submit to random drug testing. In September 2023, following the release of a report by the parties' custody evaluators, Tara filed another motion for emergency relief. She requested that Michael's parenting time be supervised at

Holly Hill Child & Family Solutions and that he be ordered to participate in a safety plan aimed at maintaining the children's well-being. The court granted Tara's motion. Michael's supervised parenting time and weekly random drug and alcohol tests continued though the December 2024 trial dates. The custodial evaluation was filed with the court on December 2, 2024.

After reviewing the evidence presented at its final hearing, the court determined that it was in the children's best interests that Michael's supervised visits continue each week and that Tara be awarded sole custody. Michael's child support obligation was set at $650 per month. In proportion to his income, Michael was ordered to pay 21% of the children's medical expenses (including counseling fees); school tuition; extracurricular activities fees; and costs of sports gear. To equalize the distribution of assets, Tara was ordered to pay to Michael $111,955 within ninety (90) days. Finally, as a consequence of his conduct over the course of the proceedings, Michael was ordered to pay $75,000 toward Tara's attorney's fees.

On appeal, Michael argues that the circuit court erred by utilizing the best interest standard set out in the provisions of KRS[1] 403.270 in its custody and parenting-time decisions. He contends that the court's final judgment constituted a modification of custody governed by the provisions of KRS 403.340 and a

---

[1] Kentucky Revised Statutes.

modification of parenting time governed by KRS 403.320. He urges that the parties' initial joint custody arrangement and parenting time schedule should have been reinstated. He reasons that if a finding of serious endangerment pursuant to KRS 403.340 and KRS 403.320 had been made at that earlier time, it would not have been supported by the evidence. Additionally, he argues that the court "afforded far too much weight to the custody evaluation." We disagree with these contentions.

KRS 403.340 (the modification of custody statute) governs modification of a custody decree. By definition, **a decree is a final judgment**, regarded as "final or appealable." *Decree*, BLACK'S LAW DICTIONARY 440 (8th ed. 2004). CR[2] 54.01. Prior to entry of a decree, a court may enter temporary custody orders (including parenting time) pursuant to the provisions of KRS 403.280 that may be modified whenever it is in the child's best interests to do so. These decisions are characterized as "*pendente lite*," "interlocutory," or "non-final." However, when the court is making its final and appealable custody decree, it must do so based on the provisions of KRS 403.270, the best interest standard. *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008). The custody and parenting time decisions that Michael challenges on appeal constitute **an initial** custody determination rather than post-decree modifications as he now contends. *See Layman v.*

---

[2] Kentucky Rules of Civil Procedure.

-5-

*Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). Consequently, neither the provisions of KRS 403.340 nor the provisions of KRS 403.320 govern.

For purposes of this case, the pertinent statute is KRS 403.270, which provides that an initial determination of custody requires consideration of the best interests of the child -- with a rebuttable presumption that joint custody and equal parenting time are in the child's best interests. Where an appellate court reviews the decision, the test is whether the findings of the trial court were clearly erroneous or constituted an abuse of its discretion. *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974). When we examine the evidence before the trial court, we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. CR 52.01; *see also Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

The circuit court made significant findings concerning the best interests of the children while considering the factors outlined in the provisions of KRS 403.270. The circuit court determined that the rebuttable presumption of joint custody and equal parenting time had been overcome, and, therefore, it awarded sole custody to Tara. Care was taken to address the nature of Michael's visitation with the children in light of unique circumstances of his mental health crisis.

Michael specifically challenges the circuit court's reference to the custody evaluator's impression that he had engaged in coercive and controlling

behavior against Tara. He contends that in the absence of a formal finding of domestic violence, the court erred in considering this behavior in its custody determination. However, the provisions of KRS 403.270 direct the court to consider *all relevant factors* when making its custody and parenting time decisions. Thus, we are persuaded that the court did not err by referring to Michael's coercive and controlling behavior as it relates to the children's best interests and the parties' ability to co-parent.

Michael also contends that the court erred by relying on the parties' custodial evaluation. He argues that the evaluation was flawed because the evaluator "made several impressions, assumptions, and diagnoses" concerning his mental health without adequate or reliable testing. The testimony of Dr. Kelli Marvin indicates that Michael was "difficult" throughout the evaluation -- that he sought to control the process; argued with directions and procedures; and required the practice to adapt parts of its techniques and protocols in order to finally complete the evaluation. Under the circumstances, we cannot agree that the court erred by determining that the evaluation was reliable. From our review of the record on appeal and the findings made, we conclude that substantial evidence supported the circuit court's determinations. There was no abuse of its discretion.

Next, Michael argues that the court erred by bifurcating the proceedings. We disagree.

"[A] trial court has broad discretion in ruling on a motion to bifurcate. Such a decision will be overturned only if it constitutes an abuse of discretion, which is found where the decision is arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Calhoun v. Provence*, 395 S.W.3d 476, 481 (Ky. App. 2012), *overruled on other grounds by Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550 (Ky. 2018) (citations omitted). The court in *Putnam v. Fanning*, 495 S.W.2d 175, 176 (Ky. 1973), held that a decree of dissolution can indeed be entered **prior** to a final disposition of the issues of outstanding child custody, child support, maintenance, and distribution of property issues. There was no error.

Related to this argument is Michael's contention that the court abused its discretion by valuing and dividing the marital estate as of the date of dissolution. Again, we disagree.

While a circuit court has discretion to consider different dates upon which to approximate the value of marital property, it is generally to be valued as of the date of dissolution or the date of a final hearing dividing marital property. KRS 403.190; *Stallings v. Stallings*, 606 S.W.2d 163, 164 (Ky. 1980); *Gaskill v. Robbins*, 361 S.W.3d 337, 340 (Ky. App. 2012) (citing *Clark v. Clark*, 782 S.W.2d 56, 59 (Ky. App. 1990)). We will not disturb a circuit court's valuation unless the decision is contrary to the weight of the evidence. *Id*. at 339.

In this case, the parties specifically agreed to the value of their largest assets -- specifically including Counseling Services of Michael Adams & Associates as of December 31, 2022. Michael remarried in March 2023, and he began to wind down the business a few months later. In light of these factors, the court did not err in relying on the date of dissolution in March 2023 for its valuation of the parties' assets. Its decision was entirely reasonable. It did not constitute an abuse of discretion, nor was it contrary to the weight of the evidence. Furthermore, we see nothing to suggest that the court intended to use any other date for its valuation or signaled to the parties that it was ever willing to do so as Michael intimates.

Next, Michael contends that the circuit court erred by awarding Tara attorney's fees. He argues that there was "no claim that Tara was disadvantage [*sic*] or financially deficient throughout the proceedings; nor does the evidence support such [a] position." He also disputes whether any evidence linked the amount of Tara's legal fees to his conduct during the proceedings. He argues that the attorney's fees award was primarily punitive in nature and that the amount ordered was arbitrary.

KRS 403.220 provides that after considering the financial resources of both parties, a circuit court may order a party to pay to the other party a reasonable amount for the cost of maintaining or defending the dissolution action. The only

express requirement for a circuit court to award fees and costs under KRS 403.220 is that it consider the financial resources of the parties; additional evidence is not necessary. *Poe v. Poe*, 711 S.W.2d 849 (Ky. App. 1986); *see also Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018) (holding that a financial disparity between the parties is no longer a necessary condition). The circuit court need not make specific findings regarding financial resources -- such as in cases where "[t]he record is replete with circumstances in which the trial court was made aware of each party's financial situation." *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 148 (Ky. App. 1990).

Additionally, while KRS 403.220 does not exist as a sole means to impose sanctions against another party, a circuit court may still consider "conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990). A trial court's decision regarding an award of attorney's fees in a dissolution action will not be disturbed on appeal absent an abuse of discretion. *Sexton v. Sexton*, 125 S.W.3d 258, 272 (Ky. 2004).

This was a long and contentious dissolution proceeding. The record supports a finding that Michael's conduct was the primary reason for the extensive motion practice and numerous hearings related to protecting the children's well-

being and Tara's professional reputation; securing discovery compliance; and responding to a series of attorneys hired by Michael.

Tara testified that she had incurred $185,257.46 in attorney's fees before the four-day final hearing began. The circuit court was keenly aware of the party's financial positions as it had just conducted an extensive hearing concerning their current resources. Based upon substantial evidence, it determined that Michael was voluntarily underemployed and that Tara had secured loans from her employer against future wages to help pay for the fees and costs incurred. Under the circumstances, we cannot say that the circuit court abused its discretion by awarding attorney's fees and costs to Tara.

Next, Michael argues that the trial court erred by concluding that he dissipated a marital asset -- namely Counseling Services of Michael Adams & Associates. In its judgment, the court awarded Tara one-half of the *agreed value* of the business as of the valuation date of December 31, 2022. Additionally, it found that Michael's unethical behavior contributed to the unwinding of the counseling business after October 2023. It rejected his testimony that the total loss of the business thereafter was attributable, in part, to Tara. These facts alone amply supported the court's conclusion as to the division of this asset -- regardless of any issues of dissipation of the marital asset by Michael. Any argument as to dissipation is simply immaterial. Consequently, there was no error.

Finally, Michael challenges the court's review of a portion of the custodial evaluation that referred to individual mental health records provided by his former therapist, Franc LaClair. The custody evaluator noted in her report that the court had apparently sustained Tara's objection to LaClair's testimony at a July 2023 hearing. Tara's objection had been based upon LaClair's lack of qualifications. As a consequence, the custody evaluator reported in December 2024 that "information from therapist LaClair may not be reliable and caution should be utilized when relying upon the below reviewed records."

The evaluator's summary of LaClair's records indicated that Michael began seeing LaClair in December 2017 and that he regularly attended sessions with LaClair between June 2021 and December 2022. The evaluator observed that Michael was reported by LaClair to be suffering with moderate anxiety related to his marriage to Tara. She also summarized session notes indicating that Michael believed that Tara gaslighted him and engaged in verbal and emotional attacks against him. She also noted that Michael had not threatened Tara or harmed her in any way; that Michael was alarmed by his children's increased anxiety and insecurity after spending time with Tara; that Tara manipulated the children; that Tara did not engage in necessary housework at the marital home; and that Michael tended to over commit to others, resulting in failure to engage in self-care.

On appeal, Michael argues that his right to due process was violated because he was "foreclosed an opportunity to cross examine [*sic*] [LaClair] at the final trial with respect to his records." He contends that the inclusion of LaClair's hearsay statements in the custody evaluation, coupled with his inability to cross-examine his former therapist, was the result of the trial court's abuse of discretion or palpable error stemming from its July 2023 evidentiary ruling. We disagree.

Our rules of evidence allow an expert to rely on facts or data reasonably utilized by experts in the field -- even where those facts or data are not independently admissible. KRE[3] 703. Moreover, KRS 403.300 provides that custody evaluators may consult **any person** who may have information about the child and his potential custodial arrangements. Michael specifically released to the evaluator the information collected by LaClair. Finally, although Michael was entitled to call his former therapist to testify at the final hearing, he elected not to do so. Michael's constitutional rights were not violated. There was no error.

Based upon the foregoing, we affirm the judgment of the Boone Circuit Court.

ALL CONCUR.

---

[3] Kentucky Rules of Evidence.

BRIEF FOR APPELLANT:

Dominic V. Millard
Dayton, Kentucky

BRIEF FOR APPELLEE:

Ruth B. Jackson
Jonathan D. Thiel
Covington, Kentucky